# EXHIBIT 2

STEVEN K. ERICKSON, JD, PhD, LLM, ABPP
LICENSED PSYCHOLOGIST
DIPLOMATE IN FORENSIC PSYCHOLOGY

15 Wyntre Brooke Drive, Suite 3A
York, PA 17403

717-902-9884
www.stevenkerickson.com

# PSYCHOLOGICAL EVALUATION

**DATE OF REPORT:** October 17, 2026

## IDENTIFYING INFORMATION

Name: Angel Rios DOB: 03/14/86 Age: 30 years

## REFERRAL INFORMATION

Attorney Eugene Ohm referred Mr. Rios for a psychological assessment regarding his federal criminal charges.

## SOURCES OF INFORMATION

1. Interview with Angel Rios, 10/14/26 (3 hours);
2. Law enforcement investigation records, various dates;
3. Audio interviews with Kris Estrada (complainant), dated 1/18/25;
4. Interrogation video, 1/23/26;
5. Presentence Investigation Report, dated 9/21/26;
6. Psychological test results:

    a. Risk Matrix-2000 (RM2000)

       The RM2000 is a statistically derived risk classification system for adult males convicted of sexual offenses.

    b. Child Sexual Abuse and Exploitation Material Perpetrator Risk Tool-Revised (CPORT-R).

       The CPORT is a risk assessment designed to predict sexual recidivism among adult male offenders with a charge or conviction for child sexual abuse material.

## INFORMED CONSENT

At the beginning of the interview, Mr. Rios was given every element of informed consent. He was informed of the purpose of the evaluation, the lack of traditional doctor-patient confidentiality, and that no treatment would be provided. He was informed that a report would be generated from the interview, disseminated to his attorney, and may be admitted into evidence in his criminal proceeding. He was informed that participation was voluntary and that he could refuse to answer any questions. He was informed that he could terminate the evaluation at any time.

## BACKGROUND INFORMATION

On August 214, 2026, Mr. Rios pleaded guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(b). The offense conduct involved an online conversation Mr. Rios had with another man in which he sent a video of a three-year-old male engaged in oral sex with an adult male. According to the presentence investigation report, Mr. Rios is eligible for probation under the applicable statute, with a minimum sentencing guideline of seventy months.

*Interview with Mr. Rios*

Mr. Rios was interviewed by video. He presented as a man of average build, appeared well-groomed with good personal hygiene, and maintained direct eye contact throughout the interview. He was polite, engaged, and cooperative from the outset, participating readily and responding thoughtfully to questions. He remained alert and fully oriented to person, place, and time. His mood was euthymic, and his affect was mostly congruent with the material being reviewed and did not appear labile or incongruent. However, he displayed a somewhat animated, expansive interpersonal style, with noticeable expressiveness in his facial reactions and gestures that occasionally exceeded the emotional tone of the topics under discussion. His speech rate and rhythm were normal, and he utilized an expansive vocabulary indicative of above-average intelligence. His thought processes were clear, direct, and organized, progressing logically without evidence of tangentiality, circumstantiality, or other indicators of a thought disorder. Attention and concentration appeared good. His immediate, recent, and remote memory also appeared intact, with no observed difficulties recalling relevant details when prompted.

Mr. Rios reported that he was born in Corona, California, and noted that his maternal grandmother served as his primary caregiver during childhood and he has no siblings. He reported having no contact with his father, which he ascribed to his father's chronic abuse of drugs. Mr. Rios stated that his mother was sixteen years old at the time of his birth and he reported that her involvement in his care was only intermittent, citing her own ongoing cocaine abuse. He noted that while his grandmother cared for him, she often employed physical discipline, was emotionally abusive at times, and also abused drugs. Mr. Rios elaborated that these difficult circumstances in his upbringing were exacerbated by the family's chronic poverty, which he attributed to the rise of conservative politics in California at the time, which he opined targeted poor people. He stated that throughout his childhood, the family relied on public assistance and food banks, and that he began working at the age of ten, cleaning houses and doing other manual labor jobs to provide money for the family.

Despite these trying conditions, Mr. Rios reported that he performed well in school and had few behavioral issues, except for mild hyperactivity. He denied any history of school suspensions, chronic truancy, alcohol or drug use, or interpersonal aggression during his developmental years. He noted that he struggled with mathematics and had an Individual Education Plan (IEP) during elementary school, but denied repeating a grade or being placed in special education. He described himself as somewhat timid in his early childhood but noted he became much more outgoing as he matured. He spoke at length about how his life became more challenging during his early adolescent years as his grandmother developed severe rheumatoid arthritis that limited her mobility, leaving him as her sole caregiver as his mother was largely absent by this time. He indicated that his grandmother died of renal failure and that he subsequently lived with various extended family members over the ensuing years.

In terms of sexual development, Mr. Rios reported that he first began to masturbate when he was eleven years old. He stated that he had his first consensual, partnered sexual experience when he was sixteen years old with a female of the same age. He estimated his lifetime number of sexual partners at twelve, most of whom were males. Mr. Rios stated that he identifies as a gay man. He reported engaging in consensual bondage practices on several occasions, but denied any history of sadistic sexual practices, paying for sex, patronizing strip clubs, or a history of sexually transmitted diseases. He reported that he was first exposed to pornography at age fourteen, which consisted of sexually explicit magazines. He stated that as an adult, he regularly viewed pornography for about ten minutes twice per week. He

denied any sexual practices while in jail, although he stated he was sexually abused twice by other inmates. Mr. Rios stated that he has never been married, has no children, and his longest romantic relationship lasted about two and a half years during his early twenties. He noted he cohabited with his partner during this time, and the relationship ended after a falling out with mutual friends. He denied any history of domestic violence.

Mr. Rios reported that after graduating from high school, he attended college and majored in political science, but became dissatisfied with the curriculum because he believed his knowledge of the subject matter was superior to that of his professors. He stated that he subsequently completed a pharmacy technician program at a vocational school and worked in this role for a couple of years, but became dissatisfied because his supervising pharmacists engaged in unethical behavior and the job was demanding. He indicated that he then held several retail positions, including one at Target, where he was prosecuted for stealing about $2,000 in cash over time, resulting in his 2018 conviction for Grand Theft. Notably, during my interview with him, Mr. Rios suggested that this behavior was justified because of California's high cost of living. Regardless, Mr. Rios reported consistent employment until his arrest for the instant offense, including multiple retail and service sector positions. He noted that he relocated to New York City in 2019, lived there for one year, and then moved to Mississippi in 2020, where he lived for about three years.

Mr. Rios reported that in the summer of 2024, he moved to Washington, D.C., to become more involved in progressive politics. He stated that he worked for a catering business but also started a political consulting business with several friends. He noted that he left the consulting business after about a year because of limited financial means. Notably, the law enforcement records reviewed for this case include a copy of Mr. Rios' LinkedIn webpage. It indicates that Mr. Rios described himself as "Chairman and Chief Executive Officer" of this ostensible business and also lists affiliations with Harvard University, Georgetown University, and the U.S. House of Representatives. It states that Mr. Rios was "President and Executive Director" of another advocacy organization. Further, according to the presentence investigation report (p. 12), Mr. Rios was unemployed at the time of his arrest.

Regarding the instant offense, Mr. Rios admitted to all essential facts. Consistent with the law enforcement records reviewed for this evaluation, Mr. Rios reported that he sent a single video of a male toddler to a man he met online. The video

showed the victim engaged in oral sexual contact with an adult male, which then transitioned to the adult engaged in oral sexual contact with the victim. He explained that he received the video about two years prior to this conversation from a man he was subscribed to on the OnlyFans site. He stated that it was stored in his Google photo album over the ensuing years. Mr. Rios explained that on the night of the instant offense, he was engaged in a sexually explicit online conversation with the man to whom he eventually sent the video. This conversation included statements that had enticed an adolescent male to send him a sexually explicit video in the past, and that the video involved in the instant offense resulted from his request to the victim's father. During my interview with him, Mr. Rios stated that these statements were fabrications by him in the moment to facilitate furthering the sexual conversation. He denied possessing any other child sexual abuse materials, and my review of the available records indicates that no other materials were located by law enforcement.

Mr. Rios explained that the instant offense occurred during a "dark time" in his life. He stated that he was essentially alone in the world without support, as he had minimal family or other relationships. However, he noted that he had resumed contact with his father, who had achieved sobriety in recent years and even lived with him in the summer of 2022. Nevertheless, he related that he had become depressed, socially isolated, and found the internet a disinhibiting influence on his behavior. Mr. Rios denied any thoughts of self-harm prior to the instant offense, but he recalled that he was placed on emergency observation at a hospital about ten years ago for suicidal ideation. He denied any other mental health treatment, but reported that he has been prescribed trazodone (an antidepressant) while in custody for mild depression. Consistent with his reports to probation, Mr. Rios denied any history of alcohol or drug abuse.

**RISK ASSESSMENT**

Mr. Rios was scored on the Risk Matrix 2000 (RM2000). The RM2000 is a statistically derived, actuarial risk classification process intended for males of at least eighteen convicted of a sexual offense. It uses information about an offender's history to provide a classification category based on projected rates of reconviction for sexual offenses. The RM2000 was developed in the United Kingdom, but its findings are consistent with other risk measures validated on populations in the United States and Canada.

Mr. Rios's scores for the RM2000 are as follows:

## RISK MATRIX 2000

| *Item* | *Criteria* | *Score* |
|---|---|---|
| Age at arrest | 18-24= 2 points<br>25-34= 1 point<br>>35= 0 points | 1 |
| Sexual convictions (including index) | 1= 0 points<br>2= 1 point<br>3,4= 2 points<br>5+= 3 points | 0 |
| Nonsexual convictions (including index) | <5= 0 points<br>5+= 1 point | 0 |
| | **INITIAL SCORE:** | **1** |
| **INITIAL RISK CALCULATION** | 0= Below Average<br>1-2= Average<br>3-4= Above Average<br>5-6= Well Above Average | |
| | | |
| ***Revised Risk Adjustment*** | | |
| Male victims | Yes/No | No |
| Stranger victims | Yes/No | No |
| Absence of romantic cohabitation for 2+ years | Yes/No | No |
| Noncontact victims | Yes/No | No |

*Note: Pursuant to the scoring manual, victim items do not apply to possession of child sexual abuse materials.*

| | | |
|---|---|---|
| ***Score Revision Criteria*** | The initial risk category increases by one level if two or three revised factors are present; by two levels if all are present. | |
| | **FINAL SCORE:** | **1** |

Final Risk Category:

| *Final Score* | *Risk Category* |
|---|---|
| 0 | Below Average |
| 1-2 | Average |
| 3-4 | Above Average |
| 5-6 | Well Above Average |

Mr. Rios's RM2000 score places him in the average risk category. Individuals in this risk category exhibit a projective five-year sexual recidivism risk between 8.9% and 11.3%. It should be noted that the validation samples encompassed in the RM2000 include both contact and noncontact sexual offenders. Scientific studies have consistently demonstrated that noncontact offenders whose offenses were committed on the internet have lower sexual recidivism rates compared to contact offenders. In light of Mr. Rios's score, routine management services would be considered appropriate, which would include outpatient sex offender-specific treatment if permitted.

To supplement the RM2000, Mr. Rios was scored on the CPORT-R, a scale developed specifically to assess the risk of individuals with charges or convictions for child sexual abuse materials. The CPORT-R, published in 2026, is an updated version of the original instrument, published in 2015, and it continues to be the sole risk assessment scale specifically designed for individuals charged or convicted of child sexual abuse material offenses.

**CPORT-R**

| | ***Risk Factors*** | ***Score*** |
|---|---|---|
| **1.** | Offender age at time of index charge (34 or younger) | 1 |
| **2.** | Any prior criminal history? | 1 |
| **3.** | Any failure on conditional release (including index charge)? | 0 |
| **4.** | Any contact sexual offending, including the index charge? | 0 |
| **5.** | Indication of pedophilic or hebephilic interests.[1] | 0 |

[1] Item 5 may appear applicable to all defendants charged with child pornography offenses, but consistent with the CPORT-R manual, it only applies to those who meet the detailed scoring criteria,

| | | |
|---|---|---|
| **6.** | Preference for boys over girls (score range is 0 to 2) | 1 |
| | | |
| | **TOTAL SCORE:** | **3** |

Risk Category (2026 version):

| *Total Score* | *Risk Level* |
|---|---|
| 0, 1 | II – Below-Average Risk |
| 2 | III- Average Risk |
| 3-4 | IVa - Above Average Risk |
| 5 and higher | IVb - Well Above Average Risk |

Mr. Rios scored a three out of a possible seven, placing him in the above-average risk pool. The CPORT-R is a relatively new instrument, and further research is needed to confirm its ability to predict recidivism accurately. In the revised combined CPORT-R dataset, approximately 13% of individuals had the same score, 12% had a higher score, and 75% had a lower score, resulting in a projected 5-year recidivism rate of 12.4% for any sexual offense and 9.2% for a child sexual abuse material offense. Although the CPORT-R is the only risk measure designed for men charged with online sexual offenses, its research base is substantially smaller than that of other measures that include contact sexual offenses.

The federal Probation and Pretrial Services Office recently published an exploratory study of the original CPORT.[2] It concluded that a history of contact sexual offending and any failure of conditional release were the most decisive factors for sexual recidivism. Additionally, further analyses of file data revealed that social problems with drug use, negative attitudes towards supervision, institutional adjustment, presence of a criminal thinking style, which includes denial of harm to victims, prior sexual arrests for sexual offenses, and past nonsexual behaviors were associated with sexual recidivism among those convicted of child sexual exploitation materials, albeit less robustly. The probation report found the other CPORT items less helpful and expressed reservations about the measure's overall utility.

---

which was approximately half of those in the validation samples.

[2] Cohen, T. H. (2023). Building a risk tool for persons placed on federal post-conviction supervision for child sexual exploitation material offenses: Documenting the federal system's past, current, and future efforts. *Federal Probation*, *87*, 19-31.

Further, as discussed in the 2021 United States Sentencing Commission's report on nonproduction offenses, 1.3% of their study population were convicted of a contact sexual offense upon release, and 3.3% were convicted of a noncontact sexual offense over three years, with most of these events occurring within the first eight months of release.[3] These findings are consistent with other published studies indicating that those convicted of nonproduction child pornography offenses have low sexual recidivism rates, including a three-year rate of 4.3% by the Pennsylvania Task Force on Child Pornography.[4] Indeed, a newly published study examining over 25,000 men convicted of offenses involving child sexual abuse materials indicated that for those without a history of contact offenses, less than 1% committed a subsequent contact sexual offense over the ensuing five years.[5]

*Dynamic Risk Factors:*

Consideration of additional risk factors may enhance the predictive accuracy of risk assessments. Unlike most of the factors considered above, additional factors amenable to change can influence projected risk, either positively or negatively, and clarify potential treatment goals. While there is no uniform definition within the scientific literature for these factors, one standard description denotes them as individual propensities or enduring characteristics.[6] Generally, any assessment of a changeable risk factor should weigh recent behavior more heavily than historical behavior in determining its presence.

The most salient and empirically supported changeable risk factors for people who have committed sex offenses include issues surrounding atypical sexuality, such as sexual preoccupation and deviant sexual interests; those indicating self-regulation

---

[3] United States Sentencing Commission. (2021). Federal sentencing of child pornography: Non-production offenses. Available at https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.

[4] Pennsylvania Commission on Crime and Delinquency (2022). *Report* of the *Task Force* on *Child Pornography Under 23 Pa.C.S. 6388(h)*. Available at https://www.pccd.pa.gov/Justice-Research/Documents/Task%20Force%20on%20Child%20Pornography%20FINAL%20Report.pdf.

[5] *See*, Baskurt, S., Babchishin, K. M., Hilkes, G., & Seto, M. C. (2025). A meta-analysis of recidivism rates among individuals who commit child sexual exploitation material (CSEM) offending. *Aggression and Violent Behavior*, *85*, 102080. *See also,* Clark, A. et al. (2025). Recidivism rates among online child sexual exploitation material offenders: systematic review and meta-analyses. *The Journal of Forensic Psychiatry & Psychology*, *36*(6), 843-868 (reporting a meta-analysis of 21 studies of 15,077 individuals revealing that 0.66% committed a contact sexual re-offense and 3.05% committed an online CSAM re-offense over an average follow-up time of approximately four years.)

[6] Mann, R. E., Hanson, R. K., & Thornton, D. (2010). Assessing risk for sexual recidivism: Some proposals on the nature of psychologically meaningful risk factors. *Sexual Abuse*, *22*(2), 191-217.

problems, including impulsivity, lifestyle instability, emotional regulation problems, and deficits in problem-solving abilities; antisocial cognitions, including offense-supportive attitudes, hostile masculinity, and noncompliance with interventions; as well as relationship problems, including intimacy deficits, emotional congruence with children, and negative social influences.[7]

Additionally, the scientific literature has highlighted significant differences among groups of individuals who have committed sexual offenses involving children, particularly those who commit exclusively online offenses compared to those who commit contact sexual offenses. Exclusively online individuals tend to exhibit atypical sexual interests, especially pedophilic sexual interests, but display lower levels of antisocial traits or behaviors such as offense-supportive cognitions, aggression, or substance use. They also have a tendency to show greater difficulties in interpersonal and romantic relationships, have more emotional deficits, and a tendency to use sexualized coping strategies. At the same time, they tend to show higher empathy for victims, greater self-control, and better academic and occupational outcomes.

In contrast, individuals who engage in both online and contact sexual offenses involving children display a higher-risk profile, marked by greater criminal history, greater sexual dysregulation, higher levels of antisocial traits, and reduced empathy. Among the factors contributing to this elevated risk, emotional congruence with children (i.e., a strong emotional connection or identification with children) has emerged as a relevant risk factor across offender subgroups. It not only increases the likelihood of contact and online sexual recidivism but may also facilitate the transition from online to contact offending. Likewise, offense-supportive attitudes that condone sexual relationships between adults and children can also elevate risk.

In Mr. Rios's case, the most prominent dynamic risk factors appear to center on his ability to self-regulate his general behavior rather than on a strong paraphilic sexual interest. His adult life has been marked by significant employment and residential instability. His reaction to emotional distress has involved capricious decisions, including a past psychiatric hospitalization, and he is reported to have had a depressed mood concurrent with the instant offense. However, he appears to lack a robust antisocial personality that would implicate future crossover contact sexual offending behaviors, although he has some narcissistic personality features that

---

[7] ***See***, Seto, M. C., Augustyn, C., Roche, K. M., & Hilkes, G. (2023). Empirically-based dynamic risk and protective factors for sexual offending. *Clinical Psychology Review*, *106*, 102355.

could interfere with developing insight into aspects leading to his offense conduct.

**FINDINGS**

Mr. Rios is a 30-year-old man who pleaded guilty to one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(b). His only prior criminal conviction was for misdemeanor theft. According to his presentence investigation report, his sentence includes the possibility of probation with a minimum sentencing guideline of seventy months.

Given my review of the records in this case and my evaluation of Mr. Rios, it is my professional opinion that the etiology of his conduct in the instant offense is likely rooted in the severe developmental hardship of his childhood. Growing up without strong, stable, or nurturing parental figures deprived Mr. Rios of critical emotional foundations, healthy interpersonal boundaries, and constructive developmental guidance. This profound early neglect and exposure to poverty initiated a cascading pattern of personal instability throughout his adult life, characterized by chronic residential transience and an inability to maintain steady employment. Within this chaotic trajectory, Mr. Rios experienced recurrent episodes of depression and emotional distress. Lacking adaptive self-regulation techniques typically instilled during childhood, he developed maladaptive coping mechanisms, resorting to sexual behaviors and impulsive decision-making as a temporary, albeit highly problematic, means of managing emotional pain, emptiness, and negative affective states.

Although Mr. Rios' conduct in the present case is unquestionably repugnant, it appears to reflect emotional dysregulation, impaired impulse control, and immature sexual coping strategies arising from his adverse childhood experiences, rather than a preferential pedophilic propensity. His cognitive and behavioral patterns developed in the context of chronic neglect and the distressing conditions associated with his adverse childhood environment. In this context, his sexual behavior appears to have become a dysfunctional means of managing internal distress, particularly during periods of depressed mood. Addressing the underlying emotional deficits through appropriate psychological treatment will likely support the development of more appropriate sexual behaviors and reduce his broader impulsivity. Mr. Rios also exhibits certain narcissistic personality traits that could present challenges to therapeutic engagement; however, those traits do not appear sufficiently pronounced to make effective treatment unlikely.

Moreover, given his overall risk profile, Mr. Rios can be safely managed in the community. Crucially, Mr. Rios does not demonstrate the pervasive, entrenched traits of an antisocial personality disorder, which would greatly elevate his recidivism risk, nor does he exhibit a history of substance abuse, which would increase the likelihood of treatment failure. His capacity for prosocial engagement, paired with his lack of an extensive criminal record, significantly enhances his likely responsiveness to structured supervision, cognitive-behavioral interventions, and community-based mental health support. Under robust supervision that enforces clear boundaries and provides routine law enforcement monitoring, the risks associated with his behavior in the instant offense can be mitigated, allowing for both public safety and meaningful rehabilitation.

All of the above opinions are stated within a reasonable degree of professional certainty.

Respectfully submitted,

Digitally signed by Steven K. Erickson, JD, PhD, LLM, ABPP

Steven K. Erickson, JD, PhD, LLM, ABPP
Licensed Psychologist (PA/NY/PSYPACT)
Board Certified in Forensic Psychology